IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JPAY LLC,<br>A Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>SHALANDA HOUSTON,<br><br>Defendant. | Civil Action No.: 3:23-cv-165 |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff, JPay LLC ("JPay") files this Complaint for Declaratory and Injunctive Relief against Shalanda Houston ("Defendant" or "Ms. Houston") and alleges:

**PARTIES**

1. Plaintiff JPay is a Delaware Limited Liability Company, with its principal place of business in Miramar, Florida. As discussed here, JPay is a citizen of Delaware and Texas. Specifically, JPay's sole member is Securus J Holdings, LLC (a Delaware LLC), whose sole member is Securus Technologies, LLC (a Delaware LLC), whose sole member is Aventiv Technologies, LLC (a Delaware LLC), whose sole member is SCRS Acquisition Corporation, a Delaware Corporation with its principal place of business in Texas.

2. Defendant Shalanda Houston is a citizen of Georgia and resides in Brookhaven, Georgia.

## JURISDICTION AND VENUE

3. Personal jurisdiction and venue are proper in this Court pursuant to the agreement between the parties. Specifically, the agreement provides that "[t]he parties hereby consent to jurisdiction and venue in the Federal District Courts in the Northern District of Texas . . . and waive any objections thereto." Exhibit 1 ¶ 16.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity of citizenship exists, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

## FACTUAL ALLEGATIONS

### A. Ms. Houston commenced a class arbitration against JPay

5. Ms. Houston is a user of JPay's electronic money transfer services.

6. On October 16, 2015, Ms. Houston—along with another user, Cynthia Kobel—initiated a class arbitration before three arbitrators (the "Arbitrators") with the American Arbitration Association ("AAA") against JPay (the "Arbitration"). *See* Exhibit 2. The Arbitration stemmed from Ms. Houston's use of JPay's electronic money transfer services. *See id.*

7. Ms. Houston asserted arbitral jurisdiction based on her assent to JPay's then existing terms of service (the "Original Agreement"). *See* Exhibit 2; Exhibit 3. Ms. Houston also sought to represent a class of "[a]ll natural persons who paid a fee to JPay for electronic money transfer services and who agreed to arbitrate their claims with JPay (the 'Class')." Exhibit 2 ¶ 89.

8. Under the Original Agreement, JPay's position was that it had only agreed to arbitrate individual claims and had not agreed to arbitrate on a classwide basis. Accordingly, JPay commenced a suit in Florida state court to obtain a declaration that classwide arbitration was not

permitted under the Original Agreement. Ms. Houston removed that suit to the United States District Court for the Southern District of Florida (the "Florida Litigation").

9.  The Florida Litigation went on for some time and included an appeal to the Eleventh Circuit Court of Appeals. Eventually, in the Florida Litigation, the court held that the Arbitrators, and not a court, should determine whether, under the Original Agreement, JPay and Ms. Houston had agreed to arbitrate on a classwide basis.

10. On September 26, 2019, the Arbitrators issued a clause construction award, holding that the Original Agreement permitted class arbitration.[1]

11. In the Florida Litigation, JPay then moved to partially vacate the clause construction award. The court ultimately denied JPay's motion and closed the case. *See infra,* n.2.

**B.   JPay revises its terms of service to include an explicit class waiver and a forum selection clause for challenges to that waiver**

12. After Ms. Houston commenced the Arbitration in October 2015 and argued that the Original Agreement allowed class arbitrations, JPay revised its terms of service to, among other things, eliminate any perceived ambiguity as to whether a class arbitration may be maintained. Specifically, in December 2015, JPay revised its terms of service to include (i) a class waiver, and (ii) a clause specifically requiring that a court, and not an arbitrator, resolve any challenges to that class waiver. *See* Exhibit 4 ¶¶ 14(f)-(g). In this way, JPay made it clear (i) that the revised agreements did not permit class arbitration, and (ii) that arbitrators did not have jurisdiction to determine whether a class arbitration could proceed under the revised agreements.[2]

---

[1] Notably, the Arbitrators have not yet decided that class certification should be granted, just that this arbitration may proceed as a putative class action.

[2] Ms. Houston entered into the December 16, 2015 Agreement. JPay, therefore, argued in the Arbitration and Florida Litigation that the December 2015 Agreement superseded the Original Agreement and foreclosed Ms. Houston's class arbitration. In their clause construction award, the Arbitrators held that the

13. From that time to the present, JPay intermittently amended its terms of service, including the forum selection clause for challenges to the class waiver. On August 18, 2021, JPay (now the wholly owned subsidiary of a Texas company) updated its terms of service to choose Texas to both supply the governing law of the agreement and act as the exclusive forum for adjudicating disputes not subject to arbitration. Exhibit 5 ¶¶ 14-15 (the "August 18 Agreement"). JPay revised its terms of service again on May 23, 2022 and July 15, 2022, but did not substantively alter the class waiver or forum selection clauses. *See* Exhibit 6; Exhibit 1 (collectively with August 18 Agreement, the "Texas Agreements").

14. Specifically, the Texas Agreements contain the following explicit class waiver:

> Waiver of Right to Bring Class Action and Representative Claims. SUBJECT TO THE SMALL CLAIMS COURT EXCEPTION ABOVE, AND CERTAIN EXCEPTIONS LISTED BELOW, **ALL DISPUTES**, PAST, PRESENT, AND FUTURE, AND REGARDLESS OF THE DATE OF ACCRUAL OF SUCH DISPUTE, **SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS**. The arbitrator is empowered to resolve the Dispute with the same remedies available in court; however, any relief must be individualized and shall not affect any other customer. JPay and you also agree that each may bring claims against the other only in our respective individual capacities (whether in arbitration or court) and in so doing **JPay and you hereby waive the right** to a trial by jury, **to assert or participate in any class action lawsuit or class action arbitration,** any private attorney general lawsuit or private attorney general arbitration, and any joint or consolidated lawsuit or joint or consolidated arbitration of any kind.

*See* Exhibit 1 ¶ 16; Exhibit 5 ¶ 15; Exhibit 6 ¶ 15 (emphasis added). The Texas Agreements also clearly set forth that only a Texas court could adjudicate the class waiver above:

> Arbitrability of Certain Disputes. Except as specifically set forth in this section, only the arbitrator is authorized to make determinations as to the scope, validity, or

---

revised terms of service did not retroactively apply to Ms. Houston in the Arbitration, given that she had already commenced her case prior to entering into the revised agreement. In the Florida Litigation, the court declined to vacate that arbitral holding. As set forth, *infra*, there is now an open issue as to the other customers nationwide who agreed to versions of the terms of service with a class waiver and a forum selection clause for challenging the class waiver. Unlike Ms. Houston, none of those putative class members commenced or intervened in any class arbitration or class litigation prior to entering into terms of service with a class waiver. And millions of them agreed *only* to terms of service that expressly included a class waiver.

enforceability of this Customer Agreement and this Arbitration Agreement, including whether any Dispute falls within its scope. **Notwithstanding the above, the scope, validity, effect, and enforceability of this agreement's waiver of** (i) class action lawsuits, (ii) **representative or class-wide arbitration . . . are to be determined solely and exclusively by the Federal District Court located in the Northern District of Texas or a Texas state court in Denton County or Collin County and not by Resolute, the AAA, or any arbitrator**. If a lawsuit is filed to enforce these waivers the parties agree that the arbitration shall be immediately stayed, by agreement or court order, until the court case is resolved and all appellate review is exhausted. The cost of proceedings under this section, including, without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party. The parties hereby consent to jurisdiction and venue of the Federal District Courts in the Northern District of Texas or Texas state court in Denton County or Collin County and waive any objections thereto.

*See* Exhibit 1 ¶ 16; Exhibit 5 ¶ 15; Exhibit 6 ¶ 15 (emphasis added).

15.     Additionally, the Texas Agreements clearly provide that should a Texas court invalidate the class waiver above, then the arbitration agreement doesn't apply, and any class proceeding must move forward in court:

> Severability. **If a court decides that the waivers or limitations of the Waiver of Right to Bring Class Action and Representative Claims section, above, are invalid or unenforceable, any putative class . . . action must be brought in a court of proper jurisdiction and not in arbitration**. Similarly, if a court determines that the ability to provide public injunctive relief is required by applicable law, the request for such public injunctive relief shall proceed in an individual action in court. Without waiving the right to appeal a court decision triggering this section, should a claim be required to proceed in court under this section, any and all disputes shall proceed in a Federal District court located in the Northern District of Texas or Texas state court in Denton County or Collin County and be decided by a judge, sitting without a jury and not as a class action lawsuit. The parties hereby consent to jurisdiction and venue of the Federal District Courts in the Northern District of Texas or Texas state court in Denton County or Collin County and waive any objections thereto.

*See* Exhibit 1 ¶ 16; Exhibit 5 ¶ 15; Exhibit 6 ¶ 15 (emphasis added).

16.     Under those provisions, parties to the Texas Agreements cannot proceed with a class arbitration under any circumstances. Either the class waiver is enforceable, or class treatment must proceed in a Texas court. *See* Exhibit 1 ¶ 16; Exhibit 5 ¶ 15; Exhibit 6 ¶ 15.

C. **Ms. Houston continues transacting with JPay and, like millions of absent putative class members, accepts the Texas Agreements that foreclose class arbitrations**

17. After filing a demand for arbitration on October 16, 2015, Ms. Houston continued to use JPay's electronic money transfer services and continued to accept JPay's revised terms of service.

18. Specifically, Ms. Houston accepted the respective Texas Agreements on October 18, 2021, June 24, 2022, and August 26, 2022. Moreover, and as described below, millions of putative class members likewise accepted the Texas Agreements (or predecessor agreements with class waivers and forum selection clauses).

D. **Ms. Houston improperly asks the Arbitrators, and not a court, to invalidate the Texas Agreements' class waiver as to millions of JPay's customers in the United States**

19. As stated above, Ms. Houston seeks to arbitrate on behalf of a class of "[a]ll natural persons who paid a fee to JPay for electronic money transfer services and who agreed to arbitrate their claims with Jpay (the 'Class')" ("Putative Class"). Exhibit 2 ¶ 89.

20. To be clear, JPay is not challenging Ms. Houston's right to proceed with a putative class arbitration in some respect.

21. But, on January 6, 2023, Ms. Houston asked the Arbitrators to invalidate the class waiver of the Texas Agreements as to all Putative Class members who entered into those contracts ("Class Waiver Putative Class Members"). This request sought to include millions of JPay customers in the Putative Class Ms. Houston represents—in direct violation of the Texas Agreements these customers and Ms. Houston agreed to.

22. The Class Waiver Putative Class Members can be divided into two groups:

(a) those who transacted with JPay **only after** a class waiver was in place and not before a class waiver was in place ("Post-Waiver Putative Class Members"); and

(b) those who transacted both before and after a class waiver was in place ("Pre-Waiver Putative Class Member").

23. Ms. Houston seeks for the Arbitrators to invalidate the class waiver as to millions of Post-Waiver and Pre-Waiver Putative Class Members—even though each of those groups of people both (i) specifically contracted for a court in Texas to make that determination, and (ii) agreed that an arbitrator may not make that determination. *See* ¶ 14, *supra*. In other words, Ms. Houston's request contravenes the applicable arbitration provision in the Texas Agreements and, therefore, falls outside of the Arbitrators' jurisdiction.

24. Because of that dispositive infirmity, moreover, any ruling by the Arbitrators as to the class waiver's enforceability could **not** have the binding, preclusive effect the parties seek. For example, if the Arbitrators hold that the waiver is enforceable, any Class Waiver Putative Class Member could initiate a lawsuit against JPay in court and argue that, by the clear and express terms of the contract they signed, they are not bound by an arbitral ruling from an arbitration they did not agree to participate in.

25. Thus, Ms. Houston's attempt for the Arbitrators to decide the scope, validity, effect, and/or enforceability of the class waiver is improper. The operative contracts—*i.e.*, the putative source of the Arbitrators' authority to bind JPay and any Putative Class Member—deprive the Arbitrators of jurisdiction over this specific issue. Pursuant to the Texas Agreements, therefore, JPay now requests the Court declare the Arbitrators are without authority to decide the issue Ms. Houston asks them to adjudicate, as set forth below.

## COUNT I – DECLARATORY JUDGMENT
### (As to Post-Waiver Putative Class Members)

26. JPay adopts and reincorporates the allegations in paragraphs 1 through 25 as set forth herein.

27. This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

28. An actual and justiciable controversy exists between JPay and Ms. Houston as to whether the Arbitrators have jurisdiction to determine the scope, validity, effect, and/or enforceability of the Texas Agreements' class waiver as to Post-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

29. Pursuant to the express and clear terms of the Texas Agreements, this Court, not the Arbitrators, must determine the scope, validity, effect, and/or enforceability of the class waiver as to the Post-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

30. Despite that clear requirement, Ms. Houston seeks to have the Arbitrators determine the scope, validity, effect, and/or enforceability of the class waiver and to, therefore, have the Arbitrators improperly adjudicate the rights of millions of JPay customers who have expressly agreed that such a decision will only be made by a court.

31. JPay, therefore, is entitled to a declaration that the Arbitrators are without power to determine the scope, validity, effect, and/or enforceability of the class waiver.

## COUNT II – INJUNCTIVE RELIEF
### (As to Post-Waiver Putative Class Members)

32. JPay adopts and reincorporates the allegations in paragraphs 1 through 25 as set forth herein.

33. If Ms. Houston is allowed to make an arbitral challenge to the Texas Agreements' class waiver as to the Post-Waiver Putative Class Members, JPay will be irreparably harmed.

34. JPay did not agree to submit to arbitration the question of the scope, validity, effect, and/or enforceability of the class waiver as to the Post-Waiver Putative Class Members. Indeed,

the exact opposite is true. The parties expressly agreed that a court, and not an arbitrator, must resolve this question.

35. No adequate remedy exists at law. If this Court does not enjoin Ms. Houston from challenging the class waiver in the Arbitration, JPay's contractual rights will be permanently diminished, as JPay will be forced to participate in an arbitral process it specifically contracted not to engage in.

36. JPay has a substantial likelihood of prevailing on the merits. The clear and express terms of the Texas Agreements provide that any challenges to the class waiver are to be decided by this Court and not the Arbitrators.

37. JPay, therefore, is entitled to an order enjoining Ms. Houston from challenging the class waiver in Arbitration.

## COUNT III – DECLARATORY JUDGMENT
### (As to Pre-Waiver Putative Class Members)

38. JPay adopts and reincorporates the allegations in paragraphs 1 through 25 as set forth herein.

39. This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

40. An actual and justiciable controversy exists between JPay and Ms. Houston as to whether the Arbitrators have jurisdiction to determine the scope, validity, effect, and/or enforceability of the Texas Agreements' class waiver as to Pre-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

41. Pursuant to the express and clear terms of the Texas Agreements, this Court, not the Arbitrators, must determine the scope, validity, effect, and/or enforceability of the class waiver as to the Pre-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

42. Despite that clear requirement, Ms. Houston seeks to have the Arbitrators determine the scope, validity, effect, and/or enforceability of the class waiver and to, therefore, have the Arbitrators improperly adjudicate the rights of millions of JPay customers who have expressly agreed that such a decision will only be made by a court.

43. JPay, therefore, is entitled to a declaration that the Arbitrators are without power to determine the scope, validity, effect, and/or enforceability of the class waiver.

## COUNT IV – INJUNCTIVE RELIEF
### (As to Pre-Waiver Putative Class Members)

44. JPay adopts and reincorporates the allegations in paragraphs 1 through 25 as set forth herein.

45. If Ms. Houston is allowed to make an arbitral challenge to the Texas Agreements' class waiver as to the Pre-Waiver Putative Class Members, JPay will be irreparably harmed.

46. JPay did not agree to submit to arbitration the question of the scope, validity, effect, and/or enforceability of the class waiver as to the Pre-Waiver Putative Class Members. Indeed, the exact opposite is true. The parties expressly agreed that a court, and not an arbitrator, must resolve this question.

47. No adequate remedy exists at law. If this Court does not enjoin Ms. Houston from challenging the class waiver in the Arbitration, JPay's contractual rights will be permanently diminished, as JPay will be forced to participate in an arbitral process it specifically contracted not to engage in.

48. JPay has a substantial likelihood of prevailing on the merits. The clear and express terms of the Texas Agreements provide that any challenges to the class waiver are to be decided by this Court and not the Arbitrators.

49.     JPay, therefore, is entitled to an order enjoining Ms. Houston from challenging the class waiver in Arbitration.

## REQUESTED RELIEF

WHEREFORE, JPay respectfully requests that this Court:

A.      Declare that the Arbitrators do not have the power to determine the enforceability of the class waiver as to Post-Waiver Putative Class Members;

B.      Enjoin Ms. Houston from challenging the class waiver in Arbitration as to Post-Waiver Putative Class Members;

C.      Declare that the Arbitrators do not have the power to determine the enforceability of the class waiver as to Pre-Waiver Putative Class Members;

D.      Enjoin Ms. Houston from challenging the class waiver in Arbitration as to Pre-Waiver Putative Class Members;

E.      Award JPay attorneys' fees and costs pursuant to the Texas Agreements, which provides that "[t]he cost of proceedings [challenging the class waiver] . . . including, without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party." Exhibit 1 ¶ 16; and

F.      Award JPay other and further relief as may be proper.

Dated: January 20, 2023 　　　　　　　　Respectfully Submitted,


　　　　　　　　　　　　　　　　　　　*/s/ Devin Freedman*
　　　　　　　　　　　　　　　　　　　Velvel (Devin) Freedman
　　　　　　　　　　　　　　　　　　　(*Pro Hac Vice Forthcoming*)
　　　　　　　　　　　　　　　　　　　Florida Bar No. 99762
　　　　　　　　　　　　　　　　　　　Colleen L. Smeryage
　　　　　　　　　　　　　　　　　　　(*Pro Hac Vice Forthcoming*)
　　　　　　　　　　　　　　　　　　　Florida Bar No.100023
　　　　　　　　　　　　　　　　　　　**FREEDMAN NORMAND FRIEDLAND LLP**
　　　　　　　　　　　　　　　　　　　1 S.E. 3rd Avenue, Suite 1240
　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　Tel.: (305) 971-5943
　　　　　　　　　　　　　　　　　　　Email: vel@fnf.law
　　　　　　　　　　　　　　　　　　　Email: csmeryage@fnf.law


　　　　　　　　　　　　　　　　　　　Christopher J. Schwegmann
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24051315
　　　　　　　　　　　　　　　　　　　cschwegmann@lynnllp.com
　　　　　　　　　　　　　　　　　　　Greg Brassfield
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24079900
　　　　　　　　　　　　　　　　　　　gbrassfield@lynnllp.com
　　　　　　　　　　　　　　　　　　　**LYNN PINKER HURST & SCHWEGMANN, LLP**
　　　　　　　　　　　　　　　　　　　2100 Ross Avenue, Suite 2700
　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　Telephone: 214-981-3800
　　　　　　　　　　　　　　　　　　　Facsimile: 214-981-3839

　　　　　　　　　　　　　　　　　　　***COUNSEL FOR PLAINTIFF JPAY LLC***